IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS
(Kansas City Docket)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CASE NO.: |
| v. | 13-20033-01,02,03,04,05,06,07,08 KHV-DJW |
| JAMES HUMBERT, | |
| KIMBERLY HUMBERT | |
|     a.k.a. Kim Humbert, | |
| CHARLES STEVENS II, | |
| JOSE RAMON CARO-CORRAL, | |
| ANGEL ARGUELLO-PLATA, | |
| DENNIS ERICSON PORTILLO | |
|     a.k.a. Maynor Benjamin Reyes, | |
|     a.k.a.  Alex Perez, | |
| JORGE URIEL DELGADO-OVALLE, and | |
| ADVANTAGE FRAMING SYSTEMS, INC. | |
| Defendants. | |

## SEALED INDICTMENT

The Grand Jury charges:

## GENERAL ALLEGATIONS

1. Defendants James Humbert and Kimberly Humbert husband and wife, owned and operated Advantage Framing (Advantage) in Spring Hill, Kansas. Charles Stevens II (Stevens), the brother of Kim Humbert, also had an ownership stake in Advantage.

2. Advantage Framing provided local builders and contractors with engineered floor, pre-built wall panel, and roof truss systems, along with onsite framing erection labor.

3. Advantage as a corporate structure had two components. Advantage Framing Systems, Inc., was incorporated in 2002, which is the umbrella for the framing services and trucking. Kim Humbert served as President of Advantage Framing Systems Inc. The second component, Advantage Component Systems, Inc., was incorporated in 2006 and housed the manufacturing equipment, lumber, inventory, design, and functions.

4. Deposits into Advantage Framing Systems, Inc., checking account are not substantial enough to cover the debits to the account; therefore, funds are routinely transferred from the Advantage Component Systems, Inc., account to cover the balance. The transfers from the "Framing" account to the "Component" account were proceeds of Title 8, United States Code, Section 1324(a)(1)(A)(iv).

5. James and Kim Humbert owned 81% of Advantage Framing, while Stevens owned 19%.

6. James and Kim Humbert owned 51% of Advantage Component while Stevens owned 10%. Advantage Component also had a number of other minority owners.

7. Advantage routinely paid the framing crews on the first and fifteenth days of each month based on the percentage of the house that was successfully completed. Advantage issued the checks listing the name of the subcontractor or check casher (Insurance Provider), the location of the build site, the percentages of the completed job, and the terms of the contract.

## THE CONSPIRACY

## COUNT I

8.  Paragraphs 1 through 7 are realleged and incorporated herein.

9.  Beginning at a time unknown, but from in or about 2005, and continuing until in or

about February 2013, in the District of Kansas and elsewhere, the defendants

**JAMES HUMBERT,**
**KIMBERLY HUMBERT,**
**a.k.a. Kim Humbert,**
**CHARLES STEVENS II,**
**JOSE RAMON CARO-CORRAL,**
**ANGEL ARGUELLO-PLATA,**
**DENNIS ERICSON PORTILLO,**
**a.k.a. Maynor Benjamin Reyes,**
**a.k.a.  Alex Perez,**
**JORGE URIEL DELGADO-OVALLE, and**
**ADVANTAGE FRAMING SYSTEMS, INC.,**

conspired and agreed, together and with others known and unknown to the grand jury,

to commit the following offenses against the United States: (a) harbor illegal aliens in

the United States for commercial advantage and private financial gain, in violation of

Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and (a)(2)(B)(ii)

### PURPOSE AND OBJECT OF THE CONSPIRACY

The purpose of the conspiracy, and its manner and means, included the following:

   a.  The purpose and object of the conspiracy was to make money and create

   wealth for defendants.

   b.  By entering into an agreement to employ persons not lawfully present in the

   United States, defendants James Humbert, Kim Humbert, Charles Stevens II,

   and Advantage Framing Systems, Inc. lowered their operating costs because

3

the wages they paid their workers did not include the employer's share of Social Security payments, worker's compensation, or unemployment insurance benefits paid to lawfully employed workers in the construction industry.

c.  By entering into an agreement to employ persons not lawfully present in the United States, resulting in lowered operating costs, defendants James Humbert, Kim Humbert, Charles Stevens II, and Advantage Framing Systems, Inc. placed themselves at a competitive advantage to other builders who did not employ persons unlawfully present in the United States, allowing the defendants to bid for contracts at a lower rate than their competitors.

d.  By entering into an agreement to be employed, though not lawfully present in the United States, co-conspirators obtained money so they could maintain their unlawful presence in the United States, and they increased the likelihood they could obtain the lawful permanent resident status they desired.

**OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY**

10.  In furtherance of the conspiracy, and to effect the objects thereof, one or more of the co-conspirators committed and caused to be committed at least one of the following acts, among others, within the District of Kansas and elsewhere:

a.  During March 2012, U.S. Department of Homeland Security (DHS) and the Internal Revenue Service (IRS) received information that the owners of Advantage (Framing or Component) employed a number of foreign nationals who were not lawfully present in the United States, nor were they authorized to be employed in the United States.

b.  To reimburse illegal aliens for their labor, Advantage devised a method that required certain undocumented aliens (who often served as the framing crew leaders) to show proof of insurance coverage. Once Kim Humbert had proof of insurance, checks were issued to crew leaders. Crew leaders were responsible to then pay the other undocumented aliens in their respective crews.

c.  On August 1, 2012, an individual told agents he created an identity using the name Jesus Gonzalez. Jesus Gonzalez provided a fictitious home address to Advantage when filling out employment documents. James Humbert, Kim Humbert, and Stevens knew that he was not providing them his true identity. Additionally, neither James Humbert, Kim Humbert, or Stevens were interested in seeing proof of insurance for each worker on his framing crew.

d.  Advantage required crew captains to maintain liability insurance for their crew. Advantage required little else from the crew captains before they were allowed to begin working. Kim Humbert served as the point of contact to the framing crews for obtaining the required liability insurance.

e.   Sometime in 2005, James Humbert approached an individual about the possibility of becoming an investor in Advantage, because Advantage was securing investors to raise at least $1,000,000 so Advantage could expand its operation.

f.  James Humbert told the potential investor that he knew of an individual who makes fraudulent identification documents for Advantage's workers

not in the country legally. By the time the government realizes that Advantage's workers were using fake social security numbers, the workers are no longer employed by Advantage.

g.  A review of bank accounts maintained in Kansas by defendants James Humbert, Kim Humbert, and Stevens for Advantage, showed that Advantage deposited funds from builders for the work done by their framing crews. The Advantage bank accounts also revealed checks issued to more than 32 crews for compensation for their framing work.

h.  The following individuals knowingly cashed checks for aliens not lawfully present in the United States nor authorized to work in the United States: Jose Ramon Caro-Corral, Jorge Uriel Delgado-Ovalle, Angel Arguello-Plata, and Dennis Ericson Portillo. These individuals also served as crew leaders that were responsible for cashing the Advantage checks and distributing the money to the framers assigned to their respective crews. A framing crew consisted of approximately 5-6 workers. During the course of the investigation, Advantage employed approximately 25 to 33 crews. It was not uncommon for one crew leader to cash Advantage checks and distribute the money to several different framing crews. All checks issued to these defendants were written on Advantage Framing Systems, Inc.'s account.

i.  Starting in about 2005 and continuing to about February 2013, aliens not lawfully present in the United States nor authorized to work in the United States were employed to work for Advantage even though one or more of

the conspirators knew or recklessly disregarded the fact the aliens were unlawfully in the United States.

j.  Starting in about 2005 and continuing on a regular basis, to in or about February, 2013, aliens not lawfully present in the United States nor authorized to work in the United States were paid cash from crew leaders who received checks from Advantage.

k.  Beginning in or about October 2010, and continuing until in or about December 2012, defendants James Humbert, Kim Humbert, and Stevens maintained bank accounts they used to make payments to employees they knew and recklessly disregarded were unlawfully present in the United States.

l.  Advantage required crew leaders to attend safety training meetings at the main Advantage business location in Spring Hill, Kansas. At these meetings, additional topics such as "How to react if investigators from Occupational Safety and Health Administration (OSHA) conduct an on-site inspection" were discussed. Workers were instructed by Advantage to tell OSHA they worked for a sub-contractor and not directly for Advantage Framing Systems.

m. James Humbert and Kim Humbert discussed how they practiced running a drill in the event that immigration officials showed up at the office. Both James Humbert and Kim Humbert remarked that the "white guys would have no clue what to do while everyone else ran and hid."

n. Beginning in or about November 2010, and continuing until on or about December 2012, Advantage Framing issued checks to a "Jesus Gonzalez." Kimberly Humbert told Jesus he would need to have insurance to be a contractor for Advantage. Advantage was aware he obtained insurance in this alias. From March 2011 through July 2012 Advantage Framing issued checks to Jesus totaling approximately $1,094,064.58.

o. Jesus Gonzalez terminated his employment with Advantage Framing in July 2012. Advantage Framing however, continued to issue checks in the name of Jesus Gonzalez after July 2012.  A total of approximately $203,886.97 in checks were issued from July 16, 2012, to October 15, 2012. Two "Jesus Gonzalez" checks were issued to individuals known by Advantage Framing to be Jose Gonzalez-Vasquez and Daniel Olivares.

p. On August 1, 2012, an individual received a check for work performed from Advantage. The check was given to this person by Kimberly Humbert in the name of Jose R. Caro Drywall (Jose Caro-Corral).  Kimberly Humbert was aware that the individual to whom she issued the check to was not Jose Caro-Corral. Advantage continued to provide this individual with checks because Jose Caro-Corral provided insurance for his crew.

q. On August 3, 2012, an individual took his check and met Jose Caro-Corral at a Bank of America location near Santa Fe Avenue and Interstate 35. Jose Caro-Corral took the check from this individual and went into the bank.  Jose Caro-Corral cashed the check and returned outside to pay this person approximately $5,530.00 in cash.

r.  Advantage issued checks to Jose R. Caro Drywall (Jose Caro-Corral) totaling approximately $349,401.67 for the period February 1, 2012 through December 17, 2012.  Jose Caro-Corral served as a check casher for several Advantage Framing crews which consisted of undocumented aliens.

s.  On October 2, 2012, an individual with the alias "Ernesto Melendez", from El Salvador and present in the United States illegally, worked as a framer for Advantage and had cashed an Advantage check for several of the framing crews. Melendez cashed the check in Olathe and was now going to go pay the crew leaders. Melendez was previously removed from the United States.

t.  In late 2009 or 2010, Melendez found work with Advantage Framing and was working under a crew leader named Dennis Portillo. Portillo was an undocumented alien from Guatemala.

u.  Melendez assumed the role of a crew leader and check casher on or about July 2012 when Dennis Portillo told him he no longer wanted to be in charge of the crew. Dennis Portillo decided not to continue to cash checks from Advantage Framing was because of the large amount of currency he had been handling and the fear of being caught by authorities.

v.  In or about May 2011 through July 2012, Advantage Framing issued checks to Dennis Ericson Portillo totaling approximately $528,256.11. On or about July 16, 2012 through October 1, 2012, Melendez, received Advantage Framing checks totaling approximately $248,098.91. Following

the arrest of Melendez, Advantage Framing began issuing checks in the name of Alex Perez. Alex Perez is an alias name for Dennis Ericson Portillo. From November 1, 2012 through December 17, 2012, Advantage Framing issued checks in the name of Alex Perez totaling approximately $57,759.21.

w.  An Olathe, Kansas money service business (MSB), known as Latino Y Punto cashed a check by Jorge Delgado-Ovalle that was dated May 15, 2012 in the amount of $11,039.62. A second MSB location also known as Latino Y Punto in Olathe, Kansas cashed numerous checks by Angel Arguello-Plata and Jorge Delgado.  All of the checks cashed were from Advantage Framing, with the checks dating back to at least January 2012.

x.  On November 17, 2012 Angel Arguello-Plata arrived at Advantage Framing in Spring Hill, KS.  After leaving Advantage, Angel Arguello-Plata went to Latino Y Punto in Olathe, Kansas.  After leaving Latino Y Punto, Angel Arguello-Plata was pulled over by an Olathe police department officer. During the traffic stop, $10,000 in cash was discovered on his person.

y.  Angel Arguello-Plata had recently cashed Advantage Framing checks made out to J.A. Construction. These checks were cashed at Latino Y Punto in Overland Park and Olathe, Kansas.

z.  Between January 5, 2011 and October 1, 2012, Advantage Framing issued approximately $811,366.70 in checks to Angel Arguello-Plata.

Between April 4, 2011 and December 17, 2012, Advantage Framing

issued approximately $419,688.95 in checks to Jorge Delgado-Ovalle.

11. The grand jury incorporates by this reference all of the allegations contained in

Counts 2 through 31 as additional overt acts committed in furtherance of the

conspiracy alleged in Count 1.This was all in violation of Title 18, United States

Code, Section 371.

## HARBORING ILLEGAL ALIENS

### COUNTS 2-12

12. Paragraphs 1 through 11 are realleged and incorporated herein.

13. On or about the dates identified below, in the District of Kansas and elsewhere,

the defendants,

**JAMES HUMBERT,**
**KIMBERLY HUMBERT**
**a.k.a. Kim Humbert,**
**CHARLES STEVENS II,**
**JOSE RAMON CARO-CORRAL,**
**ANGEL ARGUELLO-PLATA,**
**DENNIS ERICSON PORTILLO,**
**a.k.a. Maynor Benjamin Reyes,**
**a.k.a. Alex Perez,**
**JORGE URIEL DELGADO-OVALLE, and**
**ADVANTAGE FRAMING SYSTEMS, INC.,**

intentionally encouraged aliens identified below, for the purpose of commercial

advantage and private financial gain, to reside in the United States, knowing and in

reckless disregard of the fact that such residence was in violation of law.

### OVERT ACTS

| COUNT 2 | Juan B. - G. | Approximately February 2011 to December 2012 |

| COUNT 3 | Hector P. | Approximately May 2011 to May 2012 |
| COUNT 4 | Daniel M. - C. | Approximately January 2011 to January 2013 |
| COUNT 5 | Cristian N. – R. | Approximately August 2012 |
| COUNT 6 | Nestor J. | Approximately January 2011 to October 2012 |
| COUNT 7 | Oscar M. | Approximately October 2012 |
| COUNT  8 | Sergio C. | Approximately November 2012 to December 2012 |
| COUNT 9 | Jose G. – V. | Approximately June 2012 to December 2012 |
| COUNT 10 | Jose P. | Approximately November 2012 to January 2013 |
| COUNT 11 | Manuel M. – B. | Approximately March 2012 |
| COUNT 12 | Santiago C. – M. | Approximately March 2012 |

Each was in violation of Title 8, United States Code, Section

1324(a)(1)(A)(iv),(v)(II),(a)(2)(B)(ii) and Title 18, United States Code, Section 2.

## CONSPIRACY TO COMMIT MONEY LAUNDERING

### COUNT 13

Beginning at a time unknown, but from in or about 2005, and continuing until

February 2013 in the District of Kansas, and elsewhere, the defendants

**JAMES HUMBERT,**
**KIMBERLY HUMBERT,**
**a.k.a. Kim Humbert**
**CHARLES STEVENS II,**
**JOSE RAMON CARO-CORRAL,**
**ANGEL ARGUELLO-PLATA,**
**DENNIS ERICSON PORTILLO,**
**a.k.a. Maynor Benjamin Reyes,**
**a.k.a. Alex Perez,**
**JORGE URIEL DELGADO-OVALLE, and**
**ADVANTAGE FRAMING SYSTEMS, Inc.,**

and others both known and unknown to the grand jury, knowingly combined, conspired,

and agreed with each other to commit  offenses against the United States, in violation of

Title 18, United States Code, Section 1956(h) to wit: to knowingly conduct and attempt

to conduct a financial transaction affecting interstate and foreign commerce, which

transactions involved the proceeds of specified unlawful activity, that is, harboring illegal aliens for commercial advantage and private financial gain, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the approximately $4,616,507.66 in proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved the financial transactions represented proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## MANNER AND MEANS

14. On or about the dates set forth below, in the District of Kansas and elsewhere, the above named defendants issued, or caused to be issued, checks to aliens present in the United States illegally:

| DATE | CHECK NUMBER | AMOUNT | PAYABLE TO |
|---|---|---|---|
| January 2, 2011 | 11709 | $15,513.55 | Angel Arguello |
| March 15, 2011 | 11814 | $13,822.50 | Angel Arguello |
| May 1, 2011 | 11900 | $12,416.40 | Dennis Ericson Portillo |
| June 1, 2011 | 11964 | $12,913.12 | Dennis Ericson Portillo |
| April 19, 2011 | 11886 | $5,599.00 | Jorge Delgado |
| July 19, 2011 | 12043 | $12,310.80 | Jorge Delgado |
| February 1, 2012 | 12498 | $7,696.50 | Jose R. Caro Drywall |
| June 1, 2012 | 12832 | $4,603.50 | Jose R. Caro Drywall |

15. Each was in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2.

## MONEY LAUNDERING RELATED TO HARBORING ILLEGAL ALIENS

## COUNTS 14 - 31

On our about the dates set forth below, in the District of Kansas, and elsewhere,

**JAMES HUMBERT,**
**KIMBERLY HUMBERT,**
**a.k.a. Kim Humbert**
**CHARLES STEVENS II,**
**JOSE RAMON CARO-CORRAL,**
**ANGEL ARGUELLO-PLATA,**
**DENNIS ERICSON PORTILLO,**
**a.k.a. Maynor Benjamin Reyes,**
**a.k.a. Alex Perez,**
**JORGE URIEL DELGADO-OVALLE, and**
**ADVANTAGE FRAMING SYSTEMS, Inc.**

did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit: issued checks, which involved the proceeds of a specified unlawful activity, that is harboring illegal aliens for commercial advantage and private financial gain, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity. All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and 2.

| COUNT | DATE | CHECK NUMBER | AMOUNT | PAYABLE TO | NAMED DEFENDANT |
|---|---|---|---|---|---|
| 14 | February 16, 2011 | 11776 | $4,825.00 | Banuelos Construction, LLC | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, |
| 15 | August 16, 2011 | 12107 | $11,443.50 | Banuelos Construction, LLC | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, |
| 16 | January 4, 2011 | 11710 | $11,424.50 | D Santos Construction | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, |
| 17 | March 16, 2011 | 11816 | $12,516.36 | D Santos Construction | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, |
| 18 | July 16, 2012 | 12933 | $25,825.75 | Hernesto Melendez | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, |
| 19 | August 1, 2012 | 12973 | $24,134.38 | Hernesto Melendez | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, |
| 20 | April 2, 2012 | 12669 | $5,400.00 | Ivan Hernandez | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, |
| 21 | May 1, 2012 | 12755 | $7,487.00 | Ivan Hernandez | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, |
| 22 | January 3, 2011 | 11717 | $5,714.10 | Jesus Gonzalez | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, |
| 23 | February 15, 2011 | 11784 | $10,509.40 | Jesus Gonzalez | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, |
| 24 | January 2, 2011 | 11709 | $15,513.55 | Angel Arguello | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, ANGEL ARGUELLO-PLATA |
| 25 | March 15, 2011 | 11814 | $13,822.50 | Angel Arguello | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, ANGEL ARGUELLO-PLATA |

| 26 | May 1, 2011 | 11900 | $12,416.40 | Dennis Ericson Portillo | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, DENNIS ERICSON PORTILLO |
| 27 | June 1, 2011 | 11964 | $12,913.12 | Dennis Ericson Portillo | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, DENNIS ERICSON PORTILLO |
| 28 | April 19, 2011 | 11886 | $5,599.00 | Jorge Delgado | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, JORGE URIEL DELGADO-OVALLE |
| 29 | July 19, 2011 | 12043 | $12,310.80 | Jorge Delgado | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, JORGE URIEL DELGADO-OVALLE |
| 30 | February 1, 2012 | 12498 | $7,696.50 | Jose R. Caro Drywall | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, JOSE RAMON CARO-CORRAL |
| 31 | June 1, 2012 | 12832 | $4,603.50 | Jose R. Caro Drywall | JAMES HUMBERT, KIMBERLY HUMBERT, CHARLES STEVENS, II, JOSE RAMON CARO-CORRAL |

## FORFEITURE ALLEGATION I

**(**Title 8, United States Code, Section 1324 violations)

16.      The allegations contained in the preceding paragraphs of this Indictment

are hereby realleged and incorporated by reference for the purpose of alleging

forfeitures pursuant to Title 18, United States Code, Section 982(a)(6), Title 8

United States Code, Section 1324(b) and Title 28, United States Code, Section

2461.

17.      As a result of committing the foregoing offenses alleged in Counts 1

through 12, of this Indictment, the defendants,

**JAMES HUMBERT,**
**KIMBERLY HUMBERT,**
**a.k.a. Kim Humbert**
**CHARLES STEVENS II,**
**JOSE RAMON CARO-CORRAL,**
**ANGEL ARGUELLO-PLATA,**
**DENNIS ERICSON PORTILLO,**
**a.k.a. Maynor Benjamin Reyes,**
**a.k.a.  Alex Perez,**
**JORGE URIEL DELGADO-OVALLE, and**
**ADVANTAGE FRAMING SYSTEMS, Inc.,**

shall forfeit to the United States, pursuant to 8 U.S.C. §1324, 18 U.S.C.

§982(a)(6), and 28 U.S.C. §2461, any conveyance, including any vehicle used in

the commission of the offenses, any and all property, real or personal, involved in

the offenses, that constitutes, or is derived from or is traceable to the proceeds

obtained directly or indirectly from the commission of the offenses, or is used to

facilitate, or is intended to be used to facilitate, the commission of the offenses,

including but not limited to the following:

A.  Money Judgment:   A sum of money equal to and representing the amount of proceeds obtained as a result of the offenses in Counts 1 through 12 for which the defendants are liable;

B.  Property:

(1) One 2002 Toyota Tundra, VIN: 5TBBT44162S274466;

(2) One 2003 Chevrolet Silverado, VIN: 1GCEK19T83E292687;

(3) One 2007 Chevrolet Silverado, VIN: 1GCEC19X47Z108744;

(4) One 2007 GMC Sierra, VIN: 2GTEC13C671587585;

(5) One 2008 Chevrolet Silverado, VIN: 1GCEK14068Z155594.

All in violation of Title 8, United States Code, Section 1324, 18 U.S.C. §982 and 28 U.S.C. §2461.

## FORFEITURE ALLEGATION II
(Title 18, United States Code, Section 1956 violations)

18.     The allegations contained in the preceding paragraphs of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(1).

19.     As a result of committing the foregoing offenses alleged in Counts 13 through 31 of this Indictment, the defendants,

**JAMES HUMBERT,**
**KIMBERLY HUMBERT**
**a.k.a. Kim Humbert,**
**CHARLES STEVENS II,**
**JOSE RAMON CARO-CORRAL,**
**ANGEL ARGUELLO-PLATA,**
**DENNIS ERICSON PORTILLO,**
**a.k.a. Maynor Benjamin Reyes,**
**a.k.a.  Alex Perez,**
**JORGE URIEL DELGADO-OVALLE, and**
**ADVANTAGE FRAMING SYSTEMS, Inc.,**

shall forfeit to the United States pursuant to 18 U.S.C. §982(a)(1), any and all property, real or personal, involved in the offenses, and any property traceable to such property, including but not limited to the following:

      A.     Money Judgment: A sum of money equal to and representing the value of the property involved in the commission of the offenses in Counts 13 through 31, for which the defendants are liable;

      B.     Property:

           The property commonly referred to as:

           (1) One 2002 Toyota Tundra, VIN: 5TBBT44162S274466;

           (2) One 2003 Chevrolet Silverado, VIN: 1GCEK19T83E292687;

           (3) One 2007 Chevrolet Silverado, VIN: 1GCEC19X47Z108744;

           (4) One 2007 GMC Sierra, VIN: 2GTEC13C671587585;

           (6) One 2008 Chevrolet Silverado, VIN: 1GCEK14068Z155594.

All in violation of Title 18, United States Code, Section 982.

20.    <u>Substitute Assets</u>

      If any of the property described above, as a result of any act or omission of the defendants:

      A.     cannot be located upon the exercise of due diligence;

      B.     has been transferred or sold to, or deposited with, a third party;

      C.     has been placed beyond the jurisdiction of the court;

      D.     has been substantially diminished in value; or

      E.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p), as incorporated by 18 United

States Code, Section 982(b)(1) and 28 United States Code, Section 2461(c).

A TRUE BILL.


DATED: <u>March 15, 2013</u>                                    <u>s/Foreperson</u>
                                                          FOREPERSON OF THE GRAND JURY


<u>s/ Jabari B. Wamble #22730</u>
Assistant United States Attorney
for BARRY R. GRISSOM
UNITED STATES ATTORNEY
DISTRICT OF KANSAS
500 State Avenue
Kansas City, Kansas 66101
Ph:913.551.6730
Fax:913.551.6541
barry.grissom@usdoj.gov
Kansas Supreme Court No.10866



(It is requested that trial be held in Kansas City, Kansas.)

**PENALTIES**

**COUNT 1 – Title 18, United States Code, Section 371 – Conspiracy (harboring illegal aliens)**

- NMT than 5 years prison
- NMT $250,000 fine
- NMT 3 years supervised release
- $100 special assessment

**COUNTS 2 - 12** – **Title 8, United States Code, Section 1324(a)(1)(A), harboring illegal aliens for commercial advantage and private financial gain.**

- NMT than 5 years prison
- NMT $250,000 fine
- NMT 3 years supervised release
- $100 special assessment

**COUNT 13** – **Title 18, United States Code, Section 1956 (a)(1)(B)(i), conspiracy to commit money laundering.**

- NMT 20 years imprisonment;
- NMT $250,000 fine;
- NMT 3 years supervised release
- $100 special assessment

**COUNTS 14 - 31  – Title 18, United States Code, Sections 2 and 1956(a)(1)(B)(i) , money laundering related to harboring illegal aliens.**

- NMT 20 years imprisonment;
- NMT $250,000 fine;
- NMT 3 years supervised release
- $100 special assessment